IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DEMARCO WILKINS** **PLAINTIFF**

**v.** **No. 4:17CV137-DAS**

**UNKNOWN HENRY, ET AL.** **DEFENDANTS**

**MEMORANDUM OPINION**

The plaintiff, an inmate in the custody of the Mississippi Department of Corrections, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. A plaintiff's claim must be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1] For the reasons set forth below, defendants Captain King and Lt. Alexander will be dismissed with prejudice from this case, and the case will go forward as to the remaining defendants.

**Allegations**

On September 2, 2016, at about 11:00 p.m., multiple members of the Vice Lords gang in Unit 29-L of the Mississippi State Penitentiary assaulted the plaintiff, Demarco Wilkins because they

---

[1] 28 U.S.C. § 1915(g).

wanted him to rejoin their gang.  They were able to reach him in his cell because the inmates have manipulated many of the doors in 29-L, B-Zone such that they do not lock properly.  This issue had well-known to the guards and supervisors two to three months, but no one took effective steps to correct it.  Unit 29 is a close custody facility where inmates are supposed to be confined and locked away from each other.  It houses inmates who pose a risk of escape or assault – or have a serious disciplinary record.  Indeed, prison officials no longer housed inmates in Unit 29-L, A-Zone because inmates had manipulated the locks there, as well.  The Superintendent, Warden, and Captain had been aware of this problem for two to three months, but took no action to rectify it.

At the time of the attack, Mr. Wilkins was a C-custody inmate housed in Unit 29-L Building, B-Zone.  At 10:00 p.m. (about an hour before the incident), Mr. Wilkins told two corrections officers, Henry and Crawford, that he was having problems with other offenders on B-Zone and that he needed to talk to the Lieutenant or Captain, but neither officer notified the proper authority before the attack occurred.  Wilkins told the officers that several members of the Vice Lords gang had threatened to attack him.  Officers Henry and Crawford were assigned to Wilkins' unit, but neither had manned the watch tower as required.  Instead, they were sitting in chairs in the hallway, where they could neither see nor hear the inmates under their supervision.  That night, Captain King and Lt. Alexander did not make rounds for inmate count at 10:00 p.m., as they usually did.

At 11:00 p.m., the floor walker on the unit (a member of the Vice Lords) entered the watch tower and turned off the lights on the zone.  Then, fifteen to sixteen Vice Lords approached Mr. Wilkins and told him to go into his cell.  He refused, and the gang members then lifted him and carried him into his cell, as he screamed for help and struggled to get away.  The guards on duty did not respond; they could not hear him because they were not in the tower, but in the hallway.  The inmates

attacked Wilkins, punching, kicking, and stomping him; then another inmate joined the attack, beating him with a stick on his head, face, back, and ribs. This initial attack lasted about four minutes.

The gang members then dragged him to the toilet and pushed his face into it while they continued beating him and kicking him. The inmates then stripped off his clothes and attempted to sodomize him with the broomstick, but he struggled away from that attack. Then, as Wilkins lay on the floor bleeding and crying, another inmate entered the cell with a flaming roll of tissue. The inmate blew out the flame and burned Wilkins across his chest with the red-hot coal remaining. The skin on his chest burned, peeled, and bled. At that point, he could not scream because another inmate had covered his mouth. The inmates then tied his hands behind his back so he could not fight back as they burned him. After burning him, they stabbed him in the face near his eyes. At that point, he blacked out and woke up in the Unit 42 Hospital. J. Bobo of Corrections Investigation Division spoke with Wilkins and took his statement and pictures of his wounds. Mr. Wilkins requested protective custody and to be moved away from the Mississippi State Penitentiary.

Wilkins was treated with Silvadene (an antibiotic/antifungal medication used to treat burns), as well as ibuprofen and Excedrin for pain. He also received x-rays of his head, chest, and wrist. He was discharged from the hospital on September 29, 2016, twenty-seven days after the attack, and placed in administrative segregation. On October 21, 2016, Wilkins was transferred to the Central Mississippi Correctional Facility and housed on protective custody.

He suffered third degree burns to his chest, neck and back, as well as stab wounds to the face. He also suffered bruises and swelling of his head and face. He is embarrassed by the attempt to sodomize him with a broomstick, and the attack caused psychological damage which requires counseling and psychoactive medication.

**Failure to Protect**

Mr. Wilkins claims that the defendants failed to protect him from assault by other inmates. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive

risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Mr. Wilkins claims that Captain King and Lt. Alexander should have made their rounds at 10:00 p.m., and, had they done so, then he might have been moved before he could be attacked. He has not, however, alleged that they knew the attack might happen or intentionally put him in harm's way. As such, he has not stated a claim of deliberate indifference against these two defendants, and they will be dismissed, with prejudice, from this suit. Mr. Wilkins has, however, stated a claim against the remaining defendants for failure to protect him from attack by other inmates.

## Conclusion

For the reasons set forth above, defendants Captain King and Lt. Alexander will be dismissed with prejudice from this suit for failure to state a claim against them upon which relief could be granted. The case will, however, proceed as to Mr. Wilkins' claims of failure to protect against the remaining defendants: Ms. Henry, Earnest Lee, Timothy Morris, and Ms. Crawford.

**SO ORDERED**, this, the 16th day of August, 2018.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE